KHAI LEQUANG (STATE BAR NO. 202922)
klequang@orrick.com
ABIGAIL LLOYD (STATE BAR NO. 243971)
alloyd@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA  92614-8255
Telephone:   +1 949 567 6700
Facsimile:    +1 949 567 6710

Attorneys for Plaintiff
EFG BANK AG, CAYMAN BRANCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFG BANK AG, CAYMAN BRANCH,<br><br>             Plaintiff,<br><br>       v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>             Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1    Plaintiff EFG Bank AG, Cayman Branch ("EFG" or "Plaintiff"), by and

2  through its attorneys, files this complaint against Defendant Transamerica Life

3  Insurance Company ("Transamerica" or "Defendant"), and alleges as follows:

4                              **NATURE OF THE ACTION**

5    1.    Plaintiff brings this action seeking compensatory and punitive

6  damages, equitable relief, and attorneys' fees based on Transamerica's unlawful

7  increasing of the monthly deduction/cost of insurance (sometimes referred to herein

8  as "COI") rates on certain of its in-force universal life insurance policies (the

9  "Policies").[1]  By raising cost of insurance rates, in some cases as much as 92%,

10 without a proper basis, Transamerica has breached the express and implied terms of

11 the Policies, not to mention violated laws prohibiting unlawful, misleading, and

12 unfair practices in connection with the marketing, selling, and administering of life

13 insurance.

14   2.    Universal life insurance is a form of life insurance also known as

15 "flexible premium" adjustable life insurance.  With whole life insurance, a

16 policyholder pays fixed monthly premium payments for the life of a policy.

17 Universal life insurance, unlike whole life insurance, does not require fixed

18 premium payments.  With universal life insurance, a policyholder has the option to

19 pay amounts into a policy account (subject to certain limitations), and each month,

20 the policy account accrues interest as provided under the policy.  Various charges

21 and fees are then deducted from the policy account, including a charge for the

22 actual insurance – *i.e.*, the cost to bear the mortality risk.  Although there is no fixed

23 monthly premium payment that is due, if the balance in the account is insufficient

24 to cover the policy charges, including the cost of insurance charge, the policy will

25 enter a grace period and lapse unless additional premiums are paid.

26

---

27 [1] The relevant Transamerica policies use the term "Monthly Deduction Rate."  For
      ease of reference, the Monthly Deduction Rate is used herein interchangeably
28    with cost of insurance rate or "COI" rate, which is the term typically used in
      universal life insurance policies such as those at issue here.

3.      Universal life insurance is designed to give policyholders flexibility, particularly with respect to the payment of premiums.  Policyholders can choose to pay more into their account if they wish to accumulate tax-deferred interest, or they can pay just enough to cover their monthly policy charges if they do not wish to invest their funds in the policy account.

4.      Although universal life insurance permits an insurer to adjust the cost of insurance rates (by increasing or decreasing the cost of insurance rates), Transamerica's Policies limit its ability to change the Monthly Deduction Rate in two important ways.  First, any change in the Monthly Deduction Rate must be based on changes to Transamerica's "expectations as to future cost factors," such as mortality, expenses, interest, persistency, and applicable federal, state, and local taxes.  Second, any change in the Monthly Deduction Rate must be prospective only; Transamerica cannot raise the Monthly Deduction Rate to recoup past losses or make up for prior shortfalls in expected revenue.

5.      The most important assumption in life insurance is mortality.  Yet it is well-known in the life insurance industry that since Transamerica began issuing the Policies several years ago, mortality has *improved*, not *worsened*.  This improvement in mortality has resulted in new life insurance mortality tables that would, if anything, support a *decrease*, not increase, in the Monthly Deduction Rate.  Despite this, Transamerica has *increased* the Monthly Deduction Rates, and it has done so by as much as 92%, nearly double the previous rates, for some Policies, in blatant breach of the Policies' express and implied terms and conditions.

6.      Although Transamerica has never clearly stated why it has raised the Monthly Deduction Rates, it has implied that the rate increase is due to lower interest rates.  But interest rates should have a relatively minor impact on cost of insurance rates and would not justify rate increases of as much as 92%.  Furthermore, any negative impact lower interest rates might have on

- 2 -

1   Transamerica's cost of providing insurance should be offset by improved mortality.

2   For these reasons, Plaintiff is informed and believes, and on that basis alleges, that

3   Transamerica has imposed this massive rate increase in an unlawful and improper

4   attempt to recoup past losses or make up for prior shortfalls in revenue that the

5   company has experienced, including during the most recent Great Recession.

6         7.      Moreover, by drastically raising the Monthly Deduction Rates by as

7   much as 92%, it is apparent that Transamerica seeks to force Plaintiff and other

8   policyholders either to (a) pay exorbitant premiums that Transamerica knows would

9   no longer justify the ultimate death benefits, or (b) lapse or surrender their policies

10  and forfeit the premiums they have paid to date, thereby depriving policyholders of

11  the benefits of their policies.  Transamerica, in turn, will make a huge profit – either

12  through higher premium payments or by eliminating a large group of policies

13  (through lapses or surrenders) and keeping the vast majority of the premiums that

14  have been paid to date on them.

15        8.      Transamerica's misconduct, as described more fully herein, constitutes

16  not only express breaches of Plaintiff's Policies, but breaches of the implied

17  covenant of good faith and fair dealing and unlawful, unfair, and deceptive business

18  practices.  Plaintiff therefore seeks compensatory and punitive damages, as well as

19  equitable relief and attorneys' fees.

20                              **THE PARTIES**

21        9.      Plaintiff EFG Bank AG, Cayman Branch is a Swiss banking

22  corporation with its principal place of business in Switzerland and a branch office

23  in the Cayman Islands.  EFG purchased the policies at issue in this case and

24  transferred them to Wells Fargo Bank, National Association ("Wells Fargo"),

25  which credited them to a securities account as a securities intermediary.  EFG is the

26  entitlement holder under the securities account control agreement with Wells Fargo,

27  and as such is entitled to exercise the rights that comprise each Financial Asset

28

1  credited to the securities account, including the rights under the policies at issue in

2  this case.

3      10.    Upon information and belief, Defendant Transamerica Life Insurance

4  Company is an Iowa corporation with its principal place of business located in

5  Cedar Rapids, Iowa, and Transamerica Life Insurance Company is authorized to do

6  business in the State of California and regularly conducts its business in the State of

7  California, including within this judicial district.

8                      **JURISDICTION AND VENUE**

9      11.    This Court has subject matter jurisdiction under 28 U.S.C.

10  § 1332(a)(2) because the action involves parties of diverse citizenship, and because

11  the amount in controversy exceeds $75,000, exclusive of interest and costs.

12      12.    This Court has personal jurisdiction over Transamerica because

13  Transamerica regularly conducts and transacts business in this state, including

14  having issued some of the life insurance policies at issue in this state.

15      13.    Venue is proper pursuant to 28 U.S.C. §§ 1391(a)(1), (a)(2), and

16  1391(b) because Transamerica resides in this judicial district, and a substantial part

17  of the events giving rise to the claims occurred in this judicial district, including

18  Transamerica's issuance of some of the policies that are the subject of this

19  complaint.

20                       **FACTUAL BACKGROUND**

21  **A.    Plaintiff Is the Owner of Transamerica Universal Life Insurance**

22  **Policies Subject to Transamerica's Rate Increases**

23      14.    Plaintiff is the owner and beneficiary of 47 Transamerica TransUltra

24  policies subject to Transamerica's rate increases.  These policies were issued

25  between 2004 and 2006 and range in face amount from $4 million to $12.75

26  million, and are listed on the attached **Exhibit 1** (the "Plaintiff Policies").  A

27  sample of one of Plaintiff's policies, redacted for privacy, is attached hereto as

28  **Exhibit 2** ("Doe Policy").

15.     As is typical of universal life insurance policies, the Transamerica Policies provide that they will remain in force as long as there are sufficient funds in the policy account each month to cover the monthly deductions described in the Policies, which include various fees and charges.  Any balance in the policy account that is left after the deductions are taken reflects the policy account value or "Accumulated Value," which accrues interest as provided for under the Policies.  If in any month there are insufficient funds in the account to cover the deductions, the policy will enter a 61-day grace period.  If additional premiums are not paid within the grace period, Transamerica will terminate, or lapse, the policy.

16.     The largest and most significant charge under the Policies is the cost of insurance charge, which is based on a cost of insurance rate (referred to in the Policies as the "Monthly Deduction Rate").  This charge reflects the price that Transamerica charges to cover the risk of death.  The Monthly Deduction Rate is determined by multiplying the Monthly Deduction Rate times the difference between the death benefit and the Accumulation Value.  (The Accumulation Value is the savings component of a universal life insurance policy.  It is deducted from the death benefit because the policyholder does not pay cost of insurance on this amount.)

17.     The Monthly Deduction Rates under a policy are based initially on certain characteristics of the insured, including her or his gender, age, and risk class.  The Monthly Deduction Rate increases every year as the insured ages.

18.     The Policies state that Transamerica "will determine the Monthly Deduction Rate for each policy month at the beginning of that policy month."  Doe Policy, Exh. 2, p. 14.  The Policies further provide:

> Any change in the Monthly Deduction Rates will be
> prospective and will be subject to our expectations as to future
> cost factors.  Such cost factors may include, but are not limited

1          to: mortality; expenses; interest; persistency; and any applicable

2          federal, state and local taxes.

3  *Id.*, p. 14.

4          19.    Accordingly, under the plain terms of the Policies, any change in the

5  Monthly Deduction Rate (a) can only be based on Transamerica's expectations as

6  to future cost factors; and (b) must be prospective only; Transamerica cannot

7  change rates to distribute past losses (or distribute prior gains).

8          **B.    Transamerica Raises Cost of Insurance Rates**

9          20.    In or about March 2016, Transamerica began notifying policyholders

10  that it was raising the Monthly Deduction Rates on their Transamerica Policies,

11  including all of the Plaintiff Policies.  These letters stated that Transamerica was

12  increasing the Monthly Deduction Rates "based on our current expectations

13  regarding our future costs of providing this coverage."  A sample letter, for the Doe

14  Policy, is attached hereto as **Exhibit 3**.  The letters have disclosed rate increases

15  ranging from 74% to as much as 92%.  However, the letters did not specify what

16  policy "cost factors" Transamerica was basing the rate increase on.

17          **C.    The Rate Increase Violates the Terms of Transamerica's Policies**

18          21.    It is apparent that Transamerica's rate increase breaches the terms of

19  the Policies in at least four ways.  First, the rate increase is not based on

20  Transamerica's expectations as to future cost factors, but rather, upon information

21  and belief, based on changes in interest rates that date back to the mid to late 1990s.

22  Second, by basing the rate increase on interest rate changes that began in the mid to

23  late 1990s, Transamerica's rate increase is not prospective, as required by the

24  Policies, but constitutes an improper attempt to recoup prior losses or shortfalls

25  beginning over a decade ago.  Third, the rate increase is flatly excessive.  Any

26  change in interest rates could not and should not result in Monthly Deduction Rates

27  that are in some cases nearly double the prior rates.  Fourth, the rate increase

28

1   breaches the implied covenant of good faith and fair dealing that exists in every

2   insurance contract.

3          **Expectations as to Future Cost Factors**

4          22.     The Policies state that Transamerica may base a change in the Monthly

5   Deduction Rate only on changes in its expectations as to future cost factors.  These

6   cost factors include mortality; expenses; interest; persistency; and any applicable

7   federal, state and local taxes.  To be subject to "future cost factors," the magnitude

8   of any change in Monthly Deduction Rates should also correspond to any changes

9   in future cost factors.

10         23.     Here, Transamerica has not identified any *future* cost factors that

11   justify a rate increase.  While interest is listed as a cost factor upon which

12   Transamerica may base a change in the Monthly Deduction Rates, Plaintiff is

13   informed and believes and on that basis alleges that Transamerica's rate increase is

14   based on a decline in interest rates going back to the mid to late 1990s.  This

15   historic decline in interest rates cannot be the basis for a change in Monthly

16   Deduction Rates, which must be subject to Transamerica's expectations as to

17   "future" cost factors.

18         24.     Moreover, of the cost factors listed in the Policies, mortality is the

19   most significant factor in providing life insurance coverage, and it is well known in

20   the life insurance industry that over the past 20 to 30 years, mortality has improved,

21   not worsened, and people are living much longer than anticipated several years ago

22   when Transamerica priced the Policies.  This is evidenced by the release of several

23   new mortality tables over the past two decades reflecting improved mortality that

24   would, if anything, support a decrease in cost of insurance rates.

25         25.     Specifically, in 2001, the Society of Actuaries' ("SOA") and the

26   American Academy of Actuaries ("AAA") produced the 2001 Commissioner's

27   Standard Ordinary ("CSO") Table, which revised the previous 1980 CSO Table to

28   reflect significant improving mortality.  Upon information and belief, the maximum

cost of insurance rates allowed under the Transamerica Policies are based on the older 1980 CSO Table, not the newer 2001 CSO Table.  The SOA also is currently investigating an update of the 2001 CSO Table, and a 2015 investigative report by the SOA showed significant reductions in insurance company reserves compared to the 2001 CSO Table due to mortality improvements since 2001.  In 2008, the SOA also released a 2008 Valuation Basic Table that reflected significant mortality improvements compared to prior tables.

26.    These new mortality tables demonstrate that since the Transamerica Policies were originally priced, mortality has improved, not worsened, and this change in mortality would support a *decrease*, not increase, in the Monthly Deduction Rate.  Moreover, this improved mortality would offset any impact of lower interest rates.

### Attempting to Recoup Prior Losses

27.    Not only is Transamerica's rate increase not based on changes in future cost factors, by basing the rate increase on interest rates that have existed since the mid to late 1990s, the rate increase is intended to recover past losses or shortfalls on expected income since that time.  The rate increase therefore violates the requirement under the Policies that any rate increase be prospective and not attempt to recoup prior losses or shortfalls.

### Excessive Rate Increase

28.    Furthermore, by drastically raising cost of insurance rates, Transamerica seeks to force Plaintiff and other policyholders either to pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or lapse or surrender their policies and forfeit the premiums they have paid over the last decades, thereby depriving policyholders of the benefits of their policies.  Transamerica, in turn, will make a huge profit – either through higher premium payments or by eliminating a large group of policies (through lapses or surrenders) and keeping the premiums that have been paid to date.

## COUNT I

### (Breach of Contract – Express)

29.     Plaintiff realleges the allegations contained in paragraphs 1 through 28, inclusive, as if set forth fully herein.

30.     The Plaintiff Policies are binding and enforceable contracts.

31.     Defendant materially breached the Plaintiff Policies in several respects, including but not limited to the following:

    a.    By increasing the Monthly Deduction Rates on a basis other than changes to Defendant's expectations as to future cost factors;

    b.    By increasing the Monthly Deduction Rates in attempt to recoup prior losses or make up for prior shortfalls in expected revenue; and

    c.    By imposing excessive Monthly Deduction Rates.

32.     Plaintiff has performed all of its obligations under the Plaintiff Policies, except to the extent that its obligations have been excused by Defendant's conduct as alleged herein.

33.     As a direct and proximate cause of Defendant's material breaches of the Plaintiff Policies, Plaintiff has been damaged as alleged herein in an amount to be proven at trial, but in any event that exceeds $75,000, exclusive of interest.

## COUNT II

### (Implied Covenant of Good Faith and Fair Dealing – Contractual & Tortious Breach)

34.     Plaintiff realleges the allegations contained in paragraphs 1 through 28, inclusive, as if set forth fully herein.

35.     The Plaintiff Policies are binding and enforceable contracts.

36.     Each of the Plaintiff Policies includes an implied covenant that Defendant will act in good faith and deal fairly with Plaintiff.

37.     Defendant materially breached the Plaintiff Policies in several respects, including but not limited to the following:

a.    By charging excessive Monthly Deduction Rates, thereby denying Plaintiff the benefit of its actual policy account values;

b.    By attempting to force Plaintiff and other policyholders either to (a) pay exorbitant premiums that Defendant knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies, thereby forfeiting the premiums they have paid to date; and

c.    Failing to provide any meaningful disclosures about the Monthly Deduction Rate increases.

38.    Plaintiff has performed all of its obligations under the Plaintiff Policies, except to the extent that its obligations have been excused by Defendant's conduct as alleged herein.

39.    Defendant's breaches were conscious and deliberate acts, which were designed to and which did unfairly frustrate the agreed common purposes of the Plaintiff Policies and which disappointed Plaintiff's reasonable expectations by denying Plaintiff the benefits of the Plaintiff Policies.

40.    As a direct and proximate cause of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged as alleged herein in an amount to be proven at trial, but in any event that exceeds $75,000, exclusive of interest.  Furthermore, Transamerica's conduct was conscious and deliberate, and constitutes oppression, fraud, or malice, justifying an award of punitive damages.

## COUNT III

### (Declaratory Relief)

41.    Plaintiff realleges the allegations contained in paragraphs 1 through 28, inclusive, as if set forth fully herein.

42.    For reasons including, but not limited to, those stated herein, there exists an actual dispute and controversy between Plaintiff and Defendant concerning Plaintiff's rights and Defendant's obligations under the Plaintiff

- 10 -

1  Policies, including but not limited to how Defendant must implement any change in

2  the Monthly Deduction Rates and under what circumstances Defendant may change

3  the Monthly Deduction Rates.

4      43.    Accordingly, Plaintiff seeks a declaration (a) that Defendant's Monthly

5  Deduction Rates increase is improper under the Plaintiff Policies and that any

6  excess premiums received must be returned or the policies' account values

7  recalculated according to the original Monthly Deduction Rates; and (b) setting

8  forth the specific guidelines that govern the factual circumstances under which

9  Defendant can raise the Monthly Deduction Rates.

10     44.    Such a declaration will help prevent or limit any future controversies

11  under the Plaintiff Policies by providing guidance as to when and how Defendant

12  can change the Monthly Deduction Rates on its in-force Transamerica Policies.

13                                  **COUNT IV**

14              **(For Violation of Cal. Bus. & Prof. Code § 17200)**

15     45.    Plaintiff realleges the allegations contained in paragraphs 1 through

16  28, inclusive, as if set forth fully herein.

17     46.    California Business & Professions Code section 17200 prohibits "any

18  unlawful, unfair, or fraudulent business act or practice."

19     47.    Defendant has engaged in unlawful, unfair, and fraudulent business

20  acts and practices, as described in detail herein.

21     48.    As a direct and proximate cause of Defendant's unlawful, unfair, and

22  fraudulent business acts and practices, Plaintiff has lost money or property in the

23  form of excess premiums paid to Defendant.

24                              **PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiff prays for relief and judgment as follows:

26                              **On the First Count**

27     1.    For compensatory damages in an amount to be determined at trial;

28     2.    For an award of pre-judgment and post-judgment interest;

3.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

4.     For such other and further relief as the Court may deem proper.

**On the Second Count**

1.     For compensatory damages in an amount to be determined at trial;

2.     For punitive damages in an amount to be determined at trial;

3.     For an award of pre-judgment and post-judgment interest;

4.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

5.     For such other and further relief as the Court may deem proper.

**On the Third Count**

1.     For a declaration (a) that Defendant's Monthly Deduction Rate increase is improper under the Plaintiff Policies and that any excess premiums received must be returned or the policies' account values recalculated according to the original Monthly Deduction Rates; and (b) setting forth the specific guidelines that govern the factual circumstances under which Defendant can raise the Monthly Deduction Rates;

2.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

3.     For such other and further relief as the Court may deem proper.

**On the Fourth Count**

1.     For an order requiring Defendant to return all excess premiums paid on the Plaintiff Policies and prohibiting Defendant from implementing the Monthly Deduction Rate increase;

2.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

3.     For such other and further relief as the Court may deem proper.

- 12 -

1   Dated:        October 31, 2016                ORRICK, HERRINGTON &
                                                  SUTCLIFFE LLP
2

3
                                                  By: /s/ Khai LeQuang
4                                                      KHAI LEQUANG
                                                       ABIGAIL LLOYD
5                                                   Attorneys for Plaintiff
                                                  EFG BANK AG, CAYMAN
6                                                       BRANCH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff hereby demands trial by jury pursuant to Rule 38(b) of the Federal

3   Rules of Civil Procedure.

4   Dated:          October 31, 2016              ORRICK, HERRINGTON &
                                                 SUTCLIFFE LLP
5

6
                                                 By:  */s/ Khai LeQuang*
7                                                      KHAI LEQUANG
                                                       ABIGAIL LLOYD
8                                                     Attorneys for Plaintiff
                                                   EFG BANK AG, CAYMAN
9                                                        BRANCH

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28