UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Khai LeQuang | Hutson Smelley | |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS FIFTH AMENDED COMPLAINT (Dkt. [166], filed January 2, 2020)

## I.    INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its July 10, 2017 and November 4, 2019 orders. Accordingly, the Court only recites the background that gives rise to the present motion to dismiss.

Plaintiffs filed this action against defendant Transamerica Life Insurance Company ("Transamerica") on October 31, 2016. Dkt. 1. Plaintiffs thereafter filed a first amended complaint on March 30, 2017, dkt. 24, which Transamerica moved to dismiss on May 15, 2017, dkt. 31. On July 10, 2017, the Court denied Transamerica's motion to dismiss plaintiffs' first amended complaint. Dkt. 44.

In the first amended complaint, plaintiffs asserted a claim for breach of contract against Transamerica based on Transamerica's "increasing MDRs for reasons other than 'expectations as to future cost factors' and in order to 'recover past losses.'" Dkt. 44 at 10. Plaintiffs alleged that Transamerica's MDR increases violated the terms of plaintiffs' universal life insurance policies, including by, *inter alia*, allowing Transamerica to circumvent the minimum guaranteed interest rate accrued on the Accumulation Values of plaintiffs' policies. Id. at 13. The Court noted that, with respect to the policies at issue in this case which include "interest" as a cost factor that Transamerica could permissibly consider in setting the MDRs, those policies "are not reasonably susceptible to an interpretation that would preclude Transamerica from considering its interest obligations while setting MDRs." Id. Although the Court concluded that Transamerica's attempt to circumvent the minimum guaranteed interest rate did not give rise to a claim for breach of contract, the Court denied Transamerica's motion to dismiss plaintiffs' entire breach of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

contract claim because "plaintiffs have plausibly alleged that Transamerica breached the Policies by changing the MDR for reasons other than permissible cost factors." Dkt. 44 at 14.

Plaintiffs' first amended complaint also asserted a claim for breach of the implied covenant of good faith and fair dealing sounding in tort. Dkt. 44 at 17. Plaintiffs alleged that "Transamerica's MDR increase has denied plaintiffs' of Accumulation Value, interest earned on [the] Accumulation Value, and, in essence, compelled plaintiffs to pay an increase in premiums in order to retain death benefits under the Policies." Id. at 17–18. Accordingly, the Court denied Transamerica's motion to dismiss plaintiffs' tortious breach claim, concluding that "plaintiffs *have* alleged a benefit withheld that can support a claim sounding in tort." Id. at 18 (emphasis in original).

Following the Court's order denying Transamerica's motion to dismiss plaintiffs' tortious breach claim, another district court, interpreting California law, concluded in a different case involving EFG Bank, that plaintiffs challenging another insurer's MDR increases could not state a claim for tortious breach based on similar allegations. See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co., 309 F. Supp. 3d 89 (S.D.N.Y. 2018). In that case, the court noted that the plaintiffs' claims "arise less from the relationship between [p]laintiffs as insureds and [defendant] as insurer than they do from the relationship between [p]laintiffs as depositors and [defendant] as a bank (or similar financial institution)." Id. at 96.

On May 15, 2019, a different set of institutional plaintiffs filed suit against Transamerica asserting claims substantially similar to those in this action. See Brighton Trustees, LLC et al. v. Transamerica Life Insurance Company, No. 2:19-cv-04210-CAS-GJS (C.D. Cal) ("Brighton"), Dkt. 1. On August 28, 2019, the Court dismissed the Brighton plaintiffs' claim for tortious breach without prejudice. See Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541 (C.D. Cal. Aug. 28, 2019). There, citing its July 10, 2017 order in this case denying Transamerica's motion to dismiss plaintiffs' tortious breach claim, the Court noted that it "has previously sustained, at the pleading stage, similar claims for tortious breach based on allegations that Transamerica's MDR increases deprived policyholders and owners benefits in the form of the Accumulation Value and monthly accrual of guaranteed interest rates." Id. at *13. The Court noted that "[s]ince the Court decided those cases, however, . . . caselaw has developed differentiating benefits arising under the insurance component from benefits arising under the savings component of a universal life insurance policy." Id. (internal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

citation and quotation marks omitted). The Court dismissed the Brighton plaintiffs' tortious breach claim without prejudice. Brighton Trustees, 2019 WL 6315541, at *14.

On September 27, 2019, plaintiffs in this case moved to modify the scheduling order and for leave to file a fourth amended complaint. Dkt. 132. Plaintiffs' proposed fourth amended complaint included additional allegations that plaintiffs contended would cure the deficiencies that the Court recognized in the Brighton plaintiffs' claim for tortious breach. Id. at 1. Plaintiffs' proposed fourth amended complaint also included a new claim for conversion. Id. at 8. On November 4, 2019, the Court granted plaintiffs' motion to modify the scheduling order and for leave to file the proposed fourth amended complaint. Dkt. 146. Plaintiffs thereafter filed a fourth amended complaint on November 12, 2019. Dkt. 151.

After the Brighton plaintiffs filed a second amended complaint, the Court dismissed the Brighton plaintiffs' tortious breach claim with prejudice on November 4, 2019. See Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 5784925, at *8 (C.D. Cal. Nov. 4, 2019). The Court also dismissed the Brighton plaintiffs' conversion claim without prejudice, concluding that the plaintiffs "ha[d] not adequately alleged a 'right to immediate possession' of the funds that form the basis for plaintiffs' conversion claim."[1] Id. at *10.

On November 21, 2019, following the Court's November 4, 2019 order in Brighton, the parties in this case jointly stipulated to allowing plaintiffs to file a fifth amended complaint. Dkt. 157. Plaintiffs wished "to address certain issues concerning [p]laintiffs' conversion claim raised in the November 4, 2019 hearing and the Court's November 6, 2019 order on [Transamerica's] motion to dismiss" in Brighton. Id. at 1. On November 21, 2019, the Court entered an order approving the parties' joint stipulation. Dkt. 158.

Plaintiffs filed the operative fifth amended complaint on December 12, 2019, asserting claims for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and

---

[1] The Brighton plaintiffs subsequently filed a third amended complaint on December 4, 2019, containing additional allegations with respect to plaintiffs' conversion claim. Brighton, Dkt. 46. On December 18, 2019, Transamerica moved to dismiss plaintiffs' conversion claim, and the Court denied Transamerica's motion on January 23, 2020, concluding that plaintiffs had stated a claim for conversion. Brighton, Dkt. 47, 56.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

fair dealing; (4) conversion; and (5) declaratory relief. Dkt. 161 ("FAC"). Transamerica filed a partial motion to dismiss on December 23, 2019. Dkt. 163 ("Mot."). Plaintiffs filed an opposition on January 17, 2020. Dkt. 170 ("Opp."). Transamerica filed a reply on January 27, 2020. Dkt. 175 ("Reply").

The Court held a hearing on February 10, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Breach of Contract Claim

Plaintiffs' breach of contract claim alleges that Transamerica materially breached the policies' terms in four respects: (1) by increasing the MDRs for reasons other than changes to its future cost expectations; (2) by increasing the MDRs in an attempt to circumvent the guaranteed minimum interest rate; (3) by increasing the MDRs in an attempt to recoup past losses and recover for shortfalls in expected revenues; and (4) by imposing excessive cost of insurance rates, including by failing to lower these rates. FAC ¶ 86(a)–(d). Transamerica moves to dismiss plaintiffs' claim, in part, insofar as it is premised on plaintiffs' allegations that Transamerica increased the MDRs in an attempt to circumvent the guaranteed minimum interest rate. Mot. at 6.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted). At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is '*reasonably susceptible*' to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted). "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)). Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Supt. Ct., 37 Cal. 4th 377, 390 (2005)).

In its previous order denying Transamerica's motion to dismiss plaintiffs' first amended complaint, the Court noted "[w]ith a handful of exceptions, the Policies permit Transamerica to change the MDR based upon its expectations regarding 'cost factors,' including . . . *interest*." Dkt. 44 at 11 (emphasis in original). The Court concluded, however, that the policies "that list 'interest' among permissible 'cost factors' are not reasonably susceptible to an interpretation that would preclude Transamerica from considering its interest obligations while setting MDRs." Id. at 13. In other cases involving Transamerica's alleged MDR increases, the Court has similarly concluded that policies that include this language do not give rise to a breach of contract claim premised on Transamerica's purported attempts to circumvent the guaranteed minimum interest rate. See, e.g., Thompson v. Transamerica Life Ins. Co., No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, at *8 (C.D. Cal. Dec. 26, 2018) ("Transamerica first argues that plaintiff cannot state a claim based on the allegation that Transamerica increased the MDR to avoid paying guaranteed interest because the plain language of the relevant provisions specifically allows Transamerica to consider interest when changing the MDR. To the extent plaintiff interprets these contracts to preclude consideration of interest costs in setting the MDR, the Court concludes that the Policy is not reasonably susceptible to plaintiff's interpretation."); accord Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016); Brighton Trustees, 2019 WL 5784925, at *3.

Here, plaintiffs contend that they "do not allege that Transamerica breached the Policies because it considered interest in raising MDRs. What [p]laintiffs allege is that Transamerica cannot avoid its promise to pay guaranteed minimum interest rates on the Policies by directly offsetting those interest obligations through increases in MDRs (thereby effectively paying less than the guaranteed minimum interest rates)." Opp. at 23. That is precisely the argument that the Court has already rejected in Brighton Trustees, insofar as plaintiffs' policies allow Transamerica to consider "interest" in setting the MDRs. See Brighton Trustees, 2019 WL 6315541, at *10.

Plaintiffs cite to the Court's previous decision in Feller for the proposition that "if certain interest rate accruals are 'guaranteed,' a plausible reading of the policies is that defendants may not directly offset them by increasing the MDR based on its interest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

obligations." Opp. at 23 (citing Feller 2016 WL 6602561, at *10). Plaintiffs concede, however, that "the Court only applied this reasoning in Feller to policies that did not list 'interest' as a cost factor[.]" Opp. at 20.

Plaintiffs provide the Court no compelling basis to depart from its July 10, 2017 order on Transamerica's motion to dismiss.[2] To the extent that plaintiffs' policies include "interest" as an enumerated cost factor that Transamerica may consider in setting the MDRs, these policies do not give rise to a claim for breach of contract based on Transamerica's alleged attempts to circumvent the guaranteed minimum interest rate. With respect to these policies, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 86(b), **with prejudice.**

As the Court also determined in its July 10, 2017 order, however, "some of the Policies at issue in this case do *not* identify 'interest' as a cost factor Transamerica may consider in raising MDRs." Dkt. 44 at 13 n.5. (emphasis in original). With respect to these policies that do not list "interest" as a cost factor, the Court **DENIES** Transamerica's motion to dismiss.

### B. Conversion Claim

Plaintiffs also assert a claim for conversion against Transamerica. FAC ¶¶ 103–10. The gravamen of plaintiffs' claim is that plaintiffs' policies "give [p]laintiffs a possessory interest in the funds in their Accumulation Values. Transamerica, as [p]laintiffs' agent entrusted with the funds, was not permitted to use the funds for its own purposes. By increasing the MDRs in contravention of the Policies and taking the funds in the Accumulation Values for itself, Transamerica committed conversion[.]" Opp. at 13.

---

[2] Plaintiffs' breach of contract claim, as pleaded in the first amended complaint, alleged that Transamerica breached the express terms of the policies "by increasing MDRs for reasons other than 'expectations as to future cost factors' and in order to 'recover past losses.'" Dkt. 44 at 10. The Court concluded that, to the extent that plaintiffs alleged that Transamerica breached the terms of its policies by considering interest in setting MDRs *and* those policies identified "interest" as an appropriate factor that Transamerica could consider in setting MDRs, plaintiffs failed to state a claim for breach of contract. Id. at 13. Because, however, plaintiffs alleged that Transamerica breached the policies in *other* respects, the Court denied Transamerica's motion to dismiss plaintiffs' breach of contract claim in all other respects. Id. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

California law recognizes "the tort of conversion . . . as the wrongful exercise of dominion over personal property of another." Voris v. Lampert, 7 Cal. 5th 1141, 1150 (2019) (internal citation and quotation mark omitted). To establish a claim for conversion, a plaintiff must establish the following elements: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." Id. (internal citations and quotation marks omitted). The Court addresses the parties' contentions in turn.

### 1. Actual Possession or Ownership with the Right to Immediate Possession

As an initial matter, plaintiffs contend that "a right to immediate possession is not a prerequisite to stating a claim for conversion, and [p]laintiffs' ownership of, and/or right to possess, the funds is sufficient to satisfy the first element of conversion." Opp. at 12. The Court previously rejected this argument in Brighton. See Brighton, Dkt. 55 at 4–5. There, the Court concluded that, because the plaintiff investors' conversion claim "is based on Transamerica's alleged interference with plaintiffs' ownership rights, . . . a right to immediate possession is required." Id. at 5 (citing In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999). For the reasons that the Court articulated in Brighton, the Court concludes that, in order to state a claim for conversion, plaintiffs in this case must demonstrate a right to immediately possess the funds in their Accumulation Values.

### 2. Plaintiffs Allege Right to Immediate Possession

In the alternative, plaintiffs contend that "[e]ven if [p]laintiffs were required to establish a right to immediate possession, they have that right." Opp. at 15. That is because, according to plaintiffs, Transamerica's universal life insurance policies "allow [p]laintiffs to access the funds in the Accumulation Values at almost any time through Partial Surrenders, Full Surrenders, and Surrender Penalty Free Withdrawals." Id.; see also FAC ¶¶ 9, 105. In response, Transamerica makes three principal arguments as to why these allegations are insufficient to state a claim for conversion.

#### a. The Surrender Payment Provision

First, Transamerica contends that "[i]n order to hold an immediate right of possession, a plaintiff must be entitled to possession at the time of conversion, not six months later." Mot. at 15. Thus, because the "Surrender Payment Provision" of plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

policies allows Transamerica to delay payment of a partial or full surrender for up to six months, Transamerica contends that plaintiffs' conversion claim must fail.[3] Id. The Court previously rejected this argument in Brighton, concluding that "Transamerica provides no authority for the proposition that the possibility that Transamerica *may* delay *paying* the funds necessarily deprives plaintiffs of their right to immediately possess their *interest* in those funds." Brighton, Dkt. 55 at 6 (emphases in original). Here, Transamerica similarly provides no authority to support this proposition, and the Court declines to dismiss plaintiffs' conversion claim on this basis.

In Brighton, the Court also noted that, with respect to policies issued in California, Section 10164.2 of the California Insurance Code "creates an *independent* right to possession sufficient to support a conversion claim based on Transamerica's deduction of funds from the Accumulation Values accessible through partial and full surrenders." Brighton, Dkt. 55 at 8 n.5 (emphasis in original). Section 10164.2 of the California Insurance Code provides that "[f]or a policy of individual life insurance that is surrendered by the policy owner, the insurer shall return to the owner all moneys due in relation to that policy *as expeditiously as possible*, but in no event more than 45 days from the date the surrender is effective, but in no event more than 45 days from the date the surrender is effective[.]" Cal. Ins. Code § 10164.2(a) (emphasis added). The Court concluded that, to the extent that Section 10164.2(a) authorizes Transamerica to "defer *payment* by up to 45 days from the date the surrender is effective," the temporary delay in remitting funds does not, itself, defeat a policyholder's right to immediate possession. Brighton, Dkt. 55 at 8–9. Transamerica repeats that argument here—as in Brighton, the Court finds Transamerica's argument unavailing.

### b.  Sufficiency of Funds in Policies' Accumulation Values

Second, Transamerica contends that plaintiffs' conversion claim fails because, according to Transamerica, plaintiffs "did not allege in the FAC that they sufficiently fund any of their Policies so that a partial surrender was available." Reply at 16. Thus, "[i]f no funds were available to [p]laintiffs through a Partial Surrender, then it is also the case that no funds were available through a Surrender Penalty Free Withdrawal because those

---

[3] Plaintiffs attach an exemplar policy to the FAC. See Dkt. 161-2 ("Exemplar Policy"). The Exemplar Policy's Surrender Payment Provision indicates that Transamerica "may delay paying you the partial or full surrender values of this certificate for up to 6 months after we receive your Written Request for the surrender." Id. at 70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

withdrawals can never exceed the available Partial Surrender amount." Mot. at 17. The Court previously considered, and rejected, this argument in Brighton. See Brighton, Dkt. 55 at 9. The Court concluded that "[w]hether plaintiffs did, in fact, fund any of the Accumulation Values of their policies sufficient to access funds through Surrender Penalty Free Withdrawals and partial surrenders is more appropriately decided on a motion for summary judgment, however." Id.

Here, plaintiffs allege that they "had a property interest in the funds [Transamerica] deducted from their Accumulation Values in excess of the amounts permitted by the terms of the Policies" and that "[p]laintiffs had the right to immediately possess the funds from their Accumulation Values[.]" FAC ¶¶ 104–05. To the extent that evidence adduced during discovery tends to establish that plaintiffs never sufficiently funded their policies such that no funds were ever available through Surrender Penalty Free Withdrawals and partial surrenders, Transamerica may move for summary judgment on that basis. At the pleading stage, however, plaintiffs' allegations, with respect to plaintiffs' claim for conversion, are sufficient to withstand a motion to dismiss.

### c.    Demand for Return

Finally, Transamerica challenges plaintiffs' conversion claim on the basis that plaintiffs "do not allege that they ever requested a Partial Surrender or Surrender Penalty Free Withdrawal." Mot. at 17. The weight of authority, however, indicates that a claim for conversion, pursuant to California law, does not require a demand for return where: (1) the defendant's conduct demonstrates the defendant has disposed of the plaintiff's property in a manner inconsistent with the plaintiff's property rights, such as by sale, use, or consumption; or (2) where a demand for return would be futile. See, e.g., Michael Paul Thomas, et al., Cal. Civ. Prac. Torts, § 15:20 (November 2019 Update) ("When the allegedly converted property comes into the defendant's hands tortiously or unlawfully, or when demand for return of the property by the owner would prove futile, no demand is necessary as a prerequisite to a cause of action for conversion."); accord NPK Indus. v. Hunter, No. 15-cv-00811-SI, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015) (denying defendants' motion to dismiss plaintiff's conversion claim under California law on grounds that "plaintiff has failed to make demand upon the defendants for the converted property" because "plaintiffs were not required to plead that they made a demand."). Transamerica previously advanced, and the Court rejected, this argument in Brighton. See Brighton, Dkt. 55 at 10. As in Brighton, the Court declines to dismiss plaintiffs' conversion claim on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### C. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

With respect to the policies that Transamerica issued in California, plaintiffs assert, pursuant to California law, a claim for tortious breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 96–102. In particular, plaintiffs allege *inter alia* that Transamerica breached the implied covenant, giving rise to a claim sounding in tort, by: (1) "charging excessive Monthly Deduction Rates, thereby denying [p]laintiffs the benefit of their actual policy Accumulation Values"; (2) "increasing the Monthly Deduction Rates to circumvent the guaranteed minimum interest rate under the [plaintffs'] [p]olicies"; and (3) "attempting to force [p]laintiffs and other policyholders either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their [p]olicies, thereby forfeiting the premiums they have paid to date[.]" Id. ¶ 99(a)(d)(f).

The Court notes that in its July 10, 2017 order denying Transamerica's motion to dismiss plaintiffs' first amended complaint, the Court determined that plaintiffs had, based on similar allegations, stated a claim for breach of the implied covenant sounding in tort. Dkt. 44 at 17–18. The Court determined that because plaintiffs alleged that "Transamerica's MDR increase has denied plaintiffs of Accumulation Value, interest earned on its Accumulation Value, and, in essence compelled plaintiffs to pay an increase in premiums[,] . . . plaintiffs *have* alleged a benefit withheld that can support a claim sounding in tort." Id. (emphasis in original). Indeed, in other cases challenging Transamerica's MDR increases, the Court has previously sustained, at the pleading stage, similar claims for tortious breach. See, e.g., DCD Partners, LLC. v. Transamerica Life Ins. Co., No. 2:15-cv-03238-CAS-GJS, 2015 WL 5050513, at *8–9 (C.D. Cal. Aug. 24, 2015); Feller, 2016 WL 6602561, at *13.

Since the Court decided those cases and since the Court issued its July 10, 2017 order in this case, however, "caselaw has developed differentiating benefits arising under the insurance component from benefits arising under the savings component of a universal life insurance policy." Thompson, 2018 WL 6790561, at *10. For example, in AXA Equitable Life Ins. Co., another district court analyzed a similar claim for tortious breach and held that a reduction in accumulation values and guaranteed interest based upon those values relates "solely to the distinct savings component of the policies." 309 F. Supp. 3d at 96. There, the court determined that claims premised on these allegations "arise less from the relationship between Plaintiffs as insureds and [defendant] as insurer than they do

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

from the relationship between Plaintiffs as depositors and [defendant] as a bank (or similar financial institution)." AXA Equitable Life Ins. Co., 309 F. Supp. 3d at 96. The court concluded that these claims do not implicate the "special relationship" between insureds and insurer that animate the narrow exception providing a tort claim in the insurance context. Id.

Following AXA Equitable Life Ins. Co., the Court has consistently determined that challenges to Transamerica's MDR increases based on allegations regarding a reduction in Accumulation Values and guaranteed interest based upon those values, do not give rise to a claim for breach of the implied covenant sounding in tort. See Thompson, 2018 WL 6790561, at *10 ("plaintiff's claim for tortious breach . . . does not appear to be viable to the extent this claim is based on the allegation that Transamerica has withheld the benefits of the value of her accumulation account and the amount of interest credited on her accumulation account."); accord Brighton Trustees, 2019 WL 6315541, at *14; Brighton Trustees, 2019 WL 5784925, at *5. The Court's conclusions with respect to allegations regarding the accumulation values and guaranteed interest based upon those values have been based on the Court's determination that the Accumulation Values and the guaranteed interest on those values are not *insurance* benefits. See, e.g., Brighton Trustees, 2019 WL 5784925, at *4 ("That plaintiffs allege that Transamerica charged excessive MDRs in an attempt to minimize plaintiffs' Accumulation Value and accrual of interest does not transform the Accumulation Value or related interest into insurance benefits.").

In Thompson, however, the Court determined that a putative class of elderly insureds had stated a claim for breach of the implied covenant sounding in tort based on allegations that Transamerica increased MDRs in an attempt to cause policy lapses or surrenders. See Thompson, 2018 WL 6790561, at *11–12. There, the Court noted that the California Supreme Court considered a number of factors in determining whether to extend the tort remedy outside the denial of benefits and claims mishandling contexts to a scenario involving retroactive billing: "(1) an insurer's ability to charge excessive premiums is generally disciplined by competition in the marketplace; (2) the billing dispute did not deny the insured the benefits of the policy in the form of security against losses and third party liability; (3) the dispute did not require the insured to prosecute the insurer in order to enforce its rights; and (4) other traditional tort liabilities may be available to insureds who are wrongfully billed a retroactive premium." Id. at *11 (citing Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917, 939 (2004)). Considering these factors, the Court determined that "extending the tort remedy to this context is justified to deter insurers from unreasonably increasing premiums to induce early surrender or lapses of life insurance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

policies held by people who cannot turn to the market and obtain another policy due to the advanced age of the insureds." Thompson, 2018 WL 6790561, at *11.

In subsequent cases challenging Transamerica's MDR increases, the Court has distinguished the nature and character of the Thompson plaintiffs from that of other plaintiffs, particularly institutional investors who purchase Transamerica's universal life insurance policies on the secondary market. The Court has noted that the California Supreme Court has typically limited the tort remedy to the denial of benefits, claims mishandling, or policy cancellation contexts. See Brighton Trustees, 2019 WL 5784925, at *6. Because allegations that Transamerica attempted, in bad faith, to induce policy lapses or surrenders fall outside these contexts, "the proper inquiry requires the Court to apply California law as the Court believes the California Supreme Court would apply it." Id. at *7 (internal alterations and quotation marks omitted) (citing Rex v. Chase Home Fin. LLC, 905 F. Supp. 2d 1111, 1156 (C.D. Cal. 2012)). And, considering the factors that the California Supreme Court suggested in Jonathan Neil inform whether, for public policy reasons, the tort remedy should be extended outside the denial of benefits, claims mishandling, or policy cancellation contexts, the Court has determined that public policy does not favor extending the tort remedy to institutional investors. See Brighton Trustees, 2019 WL 5784925, at *8.

For example, the Court has noted that "tort recovery is considered appropriate in the insurance context because 'in general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or catastrophe." Brighton Trustees, 2019 WL 5784925, at *6 (internal alterations omitted) (citing Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 44 (1999)). In contrast, the Court has noted that, unlike traditional policyholders, institutional investors are "sophisticated entities that indisputably purchased the policies for investment purposes." Brighton Trustees, 2019 WL 5784925, at *6 (citing AXA Equitable Life Ins. Co., 309 F. Supp. 3d at 96). Similarly, whereas tort recovery is appropriate "to deter insurers from unreasonably increasing premiums . . . of life insurance policies held by people who cannot turn to the market and obtain another policy to the[ir] advanced age," institutional investors often "*can* turn to the marketplace and invest their money elsewhere." Brighton Trustees, 2019 WL 5784925, at *6 (emphasis in original) (citing AXA Equitable Life Ins. Co., 309 F. Supp. 3d at 96–97). Additionally, the Court has determined that where institutional investors "have stated claims for breach of contract and breach of the implied covenant sounding in contract," there is a reduced risk that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:16-cv-08104-CAS(GJSx) | | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

investors "have no other 'available various administrative, contractual, and tort remedies.'" Brighton Trustees, 2019 WL 5784925, at *6 (citing Jonathan Neil, 33 Cal. 4th at 941).

Here, plaintiffs concede in their opposition brief that they offer no new allegations which meaningfully distinguish them from the institutional investors in Brighton, to whom the Court declined to extend the tort remedy.[4] See Opp. at 1. To the contrary, plaintiffs "urge the Court to reconsider that ruling[.]"[5] Id. In support of their request, plaintiffs advance three principal arguments: "(a) denying [p]laintiffs the right to recover in tort would harm consumers and incentivize insurance companies to breach their policies; (b) the law entitles all policyholders to the same rights under their policies, and there is no basis for classifying policyholders such that some are entitled to assert a tort claim and others are not when the conduct complained of is the same; and (c) the Court's ruling provides no predictable way to distinguish between policyholders that . . . are entitled to tort claims and those that are not." Id. The Court addresses plaintiffs' arguments in turn.

---

[4] To the extent that plaintiffs' claim for tortious breach is premised on allegations that Transamerica has withheld the benefits of plaintiffs' Accumulation Values and the guaranteed accrual of interest on those accounts, plaintiffs' argument that these funds are *insurance* benefits is unavailing. See Opp. at 10–11. To the contrary, the FAC specifically alleges that "although the Accumulation Value is part of the death benefit paid upon the insured's death, policyholders do not pay cost of insurance on the *Accumulation Value*, which *is the savings component* of the Policies and *not the 'insurance.'*" FAC ¶ 43(a) (emphases added).

[5] During the hearing, plaintiffs' counsel requested leave to amend to including additional allegations which plaintiffs contend would clarify that Transamerica's alleged MDR increases implicates the coverage of its insureds. Although the Court raised doubts during the hearing regarding plaintiffs' proposed amendments, the Court cannot say, at this juncture, that allowing plaintiffs leave to file a sixth amended complaint would be futile. Accordingly, the Court **GRANTS** plaintiffs' leave to amend to file a sixth amended complaint incorporating plaintiffs' proposed amendments regarding the alleged relationship between Transamerica's MDR increases and the coverage of Transamerica's insureds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 1. Deterrence

Here, plaintiffs contend that their "purchases of unwanted insurance policies contribute directly to all insureds' welfare." Opp. at 5. According to plaintiffs, "[w]ithout the ability to deter and protect themselves against insurance company bad faith (as distinct from mere contract breach), third-party policy buyers will not be willing to pay as much for policies as they previously did because the insurance companies will have less downside for their tortious conduct[.]" Id. at 5. Plaintiffs therefore contend that "[l]imiting the remedies available to prospective buyers of senior citizens' life insurance policies ultimately harms those same senior citizens, because the failure to be able to assign such rights will reduce the value of the policies of those senior citizens and harm their economic well-being." Id. In particular, plaintiffs argue that their inability to recover in tort "would undermine the deterrence function of tort" because, according to plaintiffs, "[i]nsurance companies would not only be free from paying attorneys' fees—intuitive, direct damages caused by the insurer's bad faith—but they would now face an insurance regime with fewer secondary-market purchasers of policies, more lapses, more vulnerable insureds surrendering their policies for less than fair value, and the knowledge that no matter how egregious or brazen their conduct in forcing policy lapses, the worst liability they could face would be to pay back what they unlawfully took." Id. at 6. Plaintiffs urge that "[e]ven if policyholders won their breach of contract lawsuits, they would lose because, without a tortious bad faith claim, they will be unable to recover their costs in pursuing the action; it is only through the tort remedy that insurance bad faith can be adequately remedied and deterred." Id.

Notwithstanding the policy considerations that plaintiffs raise, "[t]his Court must apply 'California law as it believes the California Supreme Court would apply it.'" Anderson v. SeaWorld Parks & Entm't, Inc., No. 15-cv-02172-JSW, 2016 WL 8929295, at *10 (N.D. Cal. Nov. 7, 2016) (internal alterations omitted) (citing In re KF Dairies, Inc. & Affiliates, 224 F.3d 922, 924 (9th Cir. 2000)). And, in Jonathan Neil, the California Supreme Court indicated that extending the tort remedy is unnecessary where plaintiffs "had available various administrative, contractual, and tort remedies." 33 Cal. 4th at 941. That is because, in those circumstances "tort remedies for breach of the implied covenant of good faith and fair dealing . . . are unnecessary to protect the insured's interests[.]" Id. Here, the Court has already concluded that plaintiffs have, at the pleading stage, adequately stated a claim for conversion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 2. Assignability of Policies and Related Claims

Plaintiffs also contend that the Court should deny Transamerica's motion to dismiss plaintiffs' tortious breach claim because plaintiffs "are entitled to the same rights and remedies as any policyholder," and the Court determined in Thompson that a particular putative class of policyholders could maintain a claim for tortious breach. Opp. at 8–9. According to plaintiffs, "[t]he implied covenant does not vanish simply because an insurance policy is assigned" and "[i]f a claim for tortious bad faith is assignable, there is no reason to conclude that the right itself and the corresponding remedies do not also transfer with the rights in the Policies." Id. The Court previously considered, and rejected, these arguments in Brighton. See Brighton Trustees, 2019 WL 5784925, at *7.

Plaintiffs are correct that an insurance contract is freely assignable. See Cal. Ins. Code § 10130. However, plaintiffs' contention that "claims for tortious breach of the implied covenant of good faith and fair dealing are assignable," Opp. at 8, oversimplifies the law. The California Supreme Court has "described the bad faith action against the insurer as a 'hybrid cause of action,' one comprised of both assignable and nonassignable components." Essex Ins. Co. v. Five Star Dye House, Inc., 38 Cal. 4th 1252, 1261 (2006) (citing Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 940–42 (1976)). Accordingly, while the *cause of action* is assignable, "part of the damage arises from the personal tort aspect of the bad faith cause of action. And because a purely personal tort cause of action is not assignable in California, it must be concluded that damage for emotional distress is not assignable. The same is true of a claim for punitive damage." Murphy, 17 Cal. 3d at 942. In contrast, Brandt fees *are* assignable. Essex Ins. Co., 38 Cal. 4th at 1255.

That Brandt fees may be assignable, however, does not inform whether, *in the first instance*, California law permits an institutional investor assignee to assert a claim for tortious breach where, as here, the relevant allegations fall outside the denial of benefits, claims mishandling, or policy cancellation contexts. Considering the factors enumerated by the California Supreme Court in Jonathan Neil, the Court has already determined that, the California Supreme Court would *not*, in the first instance, extend the tort claim to institutional investors, like plaintiffs, who have other remedies available.

Nor does the assignability of Brandt fees mean that because the Court determined in Thompson that certain policyholders could maintain a tort claim, institutional investor assignees of similarly situated policyholders, like plaintiffs, must necessarily be able to recover Brandt fees. For one, the issue of Brandt fees was not before the Court in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Thompson. And, in Brandt, the California Supreme Court held that "[w]hen an insurer tortiously withholds *benefits*, . . . attorney's fees, reasonably incurred to compel payment of the *policy benefits*, [are] recoverable as an element of the damages resulting from such tortious conduct[.]" Brandt v. Superior Court, 37 Cal. 3d 813, 815 (1985) (emphases added). The Court has already determined that plaintiffs' allegations regarding Transamerica's alleged withholding of plaintiffs' Accumulation Values and the interest accrued on those values do not implicate *insurance* benefits. Therefore, even assuming *arguendo* that the Court were to determine that plaintiffs, as assignees of individuals similarly situated to the plaintiffs in Thompson, could maintain an action for tortious breach based on allegations that Transamerica raised MDRs in an attempt to induce policy lapses or surrenders, it does not follow that plaintiffs would be entitled to Brandt fees based on the allegations made in this case.

### 3. Plaintiffs' Argument Based on Pleading Standards

Plaintiffs contend that "denying tort remedies to investor-owners creates an unworkable standard and imposes onerous pleading requirements on future policyholders challenging insurance company bad faith." Opp. at 6. According to plaintiffs, "[d]etermining remedies based on the 'nature and character' of a party is unworkable and not supported by California case law. Because no such distinction is contemplated by California courts, there is no guidance on what policyholders who have been assigned rights arising out of the purchased life insurance policies . . . would have to plead to be eligible for a tort remedy." Id. at 7. Plaintiffs further assert that "[e]ven if the tort remedy were strictly limited to 'elderly insureds,' numerous questions would remain." Id.

Contrary to plaintiffs' assertions, however, the Court need not articulate a bright-line rule that dictates, *in all cases* challenging Transamerica's MDR increases, who may recover in tort for Transamerica's alleged breach of the implied covenant of good faith and fair dealing. In the insurance context, California courts have typically limited tort recovery to the contexts of denial of *insurance* benefits, claims mishandling, or cancellation of policies.[6] The California Supreme Court suggested in Jonathan Neil that courts should

---

[6] See Progressive West Ins. Co. v. Yolo County Superior Court, 135 Cal. App. 4th 263, 279 (2005) ("[T]he essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach of the covenant . . . when no benefits are due."); Sec. Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 4th 887, 892, 898 (1993)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | | Date | February 10, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

consider a number of factors in determining whether to extend the tort claim outside the denial of benefits, claims mishandling, and policy cancellation contexts. See Tilbury Constructors, Inc. v. State Comp. Ins. Fund, 137 Cal. App. 4th 466, 478 (2006) (declining to extend tort cause of action based on insurer's handling of subrogation with regard to third-party claim because "most of the factors Jonathan Neil relies upon persuade us that [plaintiff] has not stated a claim."). Consideration of the Jonathan Neil factors, with respect to plaintiffs *in this case*, counsels against extending the tort claim here.

## IV. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

The Court **GRANTS in part** and **DENIES in part** Transamerica's motion to dismiss plaintiffs' breach of contract claim, as alleged in ¶ 86(b) of the FAC. With respect to plaintiffs' policies that include "interest" as an enumerated cost factor, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 86(b) of the FAC, **with prejudice**. With respect to plaintiffs' policies that do *not* include "interest" as an enumerated cost factor, the Court **DENIES** Transamerica's motion to dismiss.

The Court **DENIES** Transamerica's motion to dismiss plaintiffs' conversion claim.

The Court **DISMISSES** plaintiffs' claim for breach of the implied covenant of good faith and fair dealing sounding in tort **without prejudice**.

Plaintiffs shall file a sixth amended complaint within **fourteen (14) days**.

IT IS SO ORDERED.

| | 00 | : | 23 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

(finding that allegations that insurer deliberately "delayed resolution of claims" constituted "improprieties in claims handling" which gave rise to claim for tortious breach); Jonathan Neil, 33 Cal. 4th at 941 ("There may be circumstances in which cancellation of the policy denies the insured the benefits of the policy.").