# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS SIXTH AMENDED COMPLAINT (Dkt. [ 189 ], March 9, 2020)

## I. INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its February 10, 2020 order. Dkt. 181 ("MTD Order"). Accordingly, the Court only sets forth those facts necessary to resolve defendant Transamerica Life Insurance Company's ("Transamerica") present motion.

On February 10, 2020, the Court granted in part and denied in part Transamerica's motion to dismiss plaintiffs' fifth amended complaint. See MTD Order. The Court dismissed without prejudice plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing. Id. at 11–18. The Court reasoned "that challenges to Transamerica's MDR increases based on allegations regarding a reduction in Accumulation Values and guaranteed interest based upon those values do not give rise to a claim for breach of the implied covenant sounding in tort." Id. at 12. That is because "Accumulation Values and the guaranteed interest on those values are not *insurance* benefits" and therefore "do not implicate the 'special relationship' between insureds and insurer that animate the narrow exception providing a tort claim in insurance context." Id.

To the extent that plaintiffs' tortious breach claim was premised on allegations that Transamerica instituted MDR increases in an attempt to cause policy lapses or surrenders, the Court acknowledged that it had previously extended the tort remedy to a putative class of elderly insureds based on similar allegations in Thompson v. Transamerica Life Ins. Co., No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, at *12 (C.D. Cal. Dec. 26, 2018). See MTD Order at 12. The Court noted, however, that "[i]n subsequent cases challenging Transamerica's MDR increases, the Court has distinguished the nature and character of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Thompson plaintiffs from that of other plaintiffs, particularly institutional investors who purchase Transamerica's universal life insurance policies on the secondary market." MTD Order at 13. Accordingly, the Court declined to extend the tort remedy to plaintiffs, who are institutional investors, because "the Court has determined that public policy does not favor extending the tort remedy to institutional investors." Id.

The Court likewise rejected plaintiffs' additional miscellaneous arguments as to why plaintiffs had stated a claim for breach of the implied covenant sounding in tort. For example, plaintiffs argued that they—along with other institutional investors—were necessary for the existence of a secondary market for universal life policies, and that without a tort remedy, including punitive damages and attorneys' fees, "insurance companies . . . would now face an insurance regime" where "the worst liability they could face would be to pay back what they unlawfully took." MTD Order at 15 (internal citation omitted). The Court rejected this argument, reasoning that the Court "must apply California law as it believes the California Supreme Court would apply it." Id. (internal citation and quotation marks omitted). Because the California Supreme Court suggested, in Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 941 (2004), that extending the tort remedy is unnecessary where plaintiffs "had available various administrative, contractual, and tort remedies," the Court reasoned it was unnecessary to extend the tort claim to plaintiffs here because the Court had already concluded that "plaintiffs have, at the pleading stage, adequately stated a claim for conversion." MTD Order at 15.

Plaintiffs also argued that "the law entitles all policyholders to the same rights under their policies, and there is no basis for classifying policyholders such that some are entitled to assert a tort claim and others are not when the conduct complained of is the same[.]" MTD Order at 14. According to plaintiffs, then, because the Court determined in Thompson that a particular putative class of policyholders could maintain a claim for tortious breach, "the implied covenant does not vanish simply because an insurance policy is assigned" because "if a claim for tortious bad faith is assignable, there is no reason to conclude that the right itself and the corresponding remedies do not also transfer with the rights in the Policies." Id. at 16 (internal alterations omitted). The Court explained, however, that the fact *cause of action* and related attorneys' fees ("Brandt fees") may be assignable "does not inform whether, *in the first instance*, California law permits an institutional investor assignee to assert a claim for tortious breach where, as here, the relevant allegations fall outside the denial of benefits, claims mishandling, or policy cancellation contexts." MTD Order at 16 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Finally, plaintiffs urged that "denying tort remedies to investor-owners creates an unworkable standard and imposes onerous pleading requirements on future policyholders challenging insurance company bad faith." MTD Order at 17. According to plaintiffs, "determining remedies based on the 'nature and character' of a party is unworkable and not supported by California case law" and would leave "no guidance on what policyholders . . . would have to plead to be eligible for a tort remedy." MTD Order at 17. The Court disagreed, concluding that "the Court need not articulate a bright-line rule that dictates, *in all cases* challenging Transamerica's MDR increases, who may recover in tort[.]" Id. (emphasis in original). That is because "[i]n the insurance context, California courts have typically limited tort recovery to the contexts of denial of insurance benefits, claims mishandling, or cancellation of policies," and where a particular case falls outside those contexts, the California Supreme Court suggested in Jonathan Neil "that courts should consider a number of factors in determining whether to extend the tort claim[.]" Id. at 17–18 (internal emphasis omitted). The Court concluded that "[c]onsideration of the Jonathan Neil factors, with respect to plaintiffs *in this case*, counsels against extending the tort claim here." Id. at 18 (emphasis in original).

Plaintiffs thereafter filed a sixth amended complaint on February 24, 2020. Dkt. 184 ("SAC"). On March 9, 2020, Transamerica filed a partial motion to dismiss, seeking dismissal of plaintiffs' claim for tortious breach of the implied covenant. Dkt. 189-1 ("Mot."). Plaintiffs filed an opposition on March 16, 2020. Dkt. 194 ("Opp."). Transamerica filed a reply on March 23, 2020. Dkt. 195 ("Reply").

The Court held a hearing on April 6, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Plaintiffs assert a claim for breach of the implied covenant of good faith and fair dealing sounding in tort. See SAC ¶¶ 97–107. According to plaintiffs, the SAC contains additional allegations which cure the deficiencies that the Court previously identified in the Court's prior order dismissing plaintiffs' tortious breach claim. Indeed, plaintiffs make a number of arguments as to why the Court should deny Transamerica's present motion to dismiss—the Court addresses each in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### A.     MDR Increases Shorten the Period of Coverage

In other cases where policyholders have challenged Transamerica's MDR increases as a breach of the implied covenant of good faith and fair dealing sounding in tort, the Court has previously distinguished allegations that Transamerica has denied policyholders an "insurance benefit" from allegations that Transamerica has attempted to induce, in bad faith, policyholders to lapse or surrender their policies. See, e.g., MTD Order at 12. The SAC contains additional allegations which, according to plaintiffs, clarify that Transamerica's alleged misconduct has deprived plaintiffs of an "insurance benefit": the "period of coverage" that the original insureds bargained for when they originally took out plaintiffs' policies from Transamerica.

Plaintiffs allege that "Transamerica's internal documents show how the Monthly Deduction Rate increases deny [p]laintiffs the benefits of their policies: the increases result in the early termination of [p]laintiffs' policies." SAC ¶ 103. According to plaintiffs, an internal Transamerica presentation to Transamerica's management "illustrate[s] how increasing the Monthly Deduction Rates by about 25% shortens the period of coverage of a sample $1.5 million policy by two years." Id. Plaintiffs aver that "[b]y shortening the period of coverage, Transamerica has denied policyholders, including [p]laintiffs, the full coverage they were entitled to based on proper Monthly Deduction Rates." Id.

In response, Transamerica contends that this additional allegation "point[s] out the obvious—if no further premiums are paid out on a policy, it may lapse before the insured dies, and because of the MDR increase, it may lapse sooner." Mot. at 9. Transamerica also argues that this allegation "do[es] no more than restate [p]laintiffs' allegation that the MDR increases negatively impacted their Accumulation Values, which the Court previously held was insufficient." Id.

Transamerica misconstrues the gravamen of plaintiffs' allegation. Plaintiffs' argument appears to be that because Transamerica's policies remain in effect only so long as policyholders maintain a positive Accumulation Value, Transamerica's MDR increases cause the Accumulation Value to deplete sooner, which in turn causes the policies to lapse sooner than they would, absent the MDR increases. However, plaintiffs' argument presupposes that Transamerica's life insurance policies guarantee a "period of coverage" that Transamerica's MDR increases could then cause to be shortened. See SAC ¶ 103. Other allegations in the SAC belie plaintiffs' contention, however.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

For example, plaintiffs allege that "[t]erm life insurance provides protection for a limited number of years. The insurer pays the death benefit to the policyholder if the insured dies during the stipulated term (such as 10 or 20 years)." SAC ¶ 6. "If the insured survives the term (*i.e.,* the term expires and the insured is still alive), or if premiums are not paid, the policy expires with no cash value." Id. In contrast, plaintiffs aver that "[u]nlike term insurance, cash value life insurance can remain in force for the insured's entire life so long as the policyholder maintains a positive account value." Id. ¶ 7. Plaintiffs allege that Transamerica offers "universal life insurance," which "is a form of cash value life insurance[.]" Id. ¶¶ 4, 8.

The application of plaintiffs' "shortened period of coverage" argument is straightforward in the context of term life insurance. For example, if an insurer guarantees to an insured that it will provide coverage to the insured until the insured reaches the age of eighty, but then subsequently only guarantees the insured's coverage until the insured reaches the age of seventy-eight, it follows, then, that the insurer has denied the insured the "full coverage" of the insured's policy by "shortening the period of coverage."

Based on the SAC's allegations, the same does not appear to be true for "cash value life insurance" policies, like those at issue here. Indeed, plaintiffs specifically allege that "[a]s is typical of universal life insurance policies, the Plaintiff Policies provide that they will remain in force as long as there are sufficient funds in the policy account each month to cover the monthly policy charges (referred to in the Policies as the 'Monthly Deduction')." SAC ¶ 42. Moreover, plaintiffs elsewhere allege that "the Policies permit Transamerica to adjust the Monthly Deduction Rates[.]" Id. ¶ 14. It does not follow, then, that Transamerica's MDR increases "shortened the period of coverage" of plaintiffs' policies because "the period of coverage" under the policies was the period during which plaintiffs maintained a positive Accumulation Value and because the policies permitted Transamerica to adjust and deduct the MDRs from plaintiffs' Accumulation Values. That plaintiffs complain that Transamerica increased the MDRs in a way that violated other provisions of the policies does not mean that Transamerica shortened the period of coverage so as to deny plaintiffs an "insurance benefit" due under plaintiffs' policies.

### B. Jonathan Neil Factors

Where, as here, institutional investors have asserted a claim for tortious breach of the implied covenant against Transamerica based on allegations that Transamerica increased its MDRs in an attempt to induce policy lapses or surrenders, the Court has noted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

that in Jonathan Neil, the California Supreme Court suggested a number of factors that courts should consider in determining whether to extend the tort claim outside the denial of benefits and claims mishandling contexts, including: "(1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies." Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co., No. 2:19-cv-06478-CAS-GJS, 2020 WL 833518, at *9 (C.D. Cal. Feb. 19, 2020) (internal citations omitted). Plaintiffs contend that the SAC's additional allegations demonstrate that "the relevant [Jonathan Neil] factors strongly support the availability of tort remedies where an insurance company increases the cost of insurance in bad faith." Opp. at 3.

### 1. Discipline by the Secondary Market

Plaintiffs argue that extending the tort claim in this case is necessary because "[m]arketplace competition cannot adequately discipline Transamerica for its unlawful rate increases." Opp. at 6. That is because, according to plaintiffs, "[n]either the insureds on the primary market nor the investor owners on the secondary market can simply replace their Transamerica policies with new policies on the same lives issued by different insurers at the same cost." Id. The Court does not find plaintiffs' argument availing.

In Jonathan Neil, the California Supreme Court declined to extend the tort remedy outside the claims mishandling and denial of benefits contexts to an insurer's practice of knowingly and retroactively billing insureds for higher premiums than were actually owed, based, in part, on reasoning that "generally speaking, the insurer's ability to charge excessive premiums will be disciplined by competition among insurers." 33 Cal. 4th at 939. The California Supreme Court cited its earlier opinion in Foley v. Interactive Data Corp., wherein the California Supreme Court previously declined to extend the tort claim to the employment relationship. See Jonathan Neil, 33 Cal. 4th at 938 (citing Foley v. Interactive Data Corp., 47 Cal. 3d 654, 692 (1988)). Indeed, in Foley, the California Supreme Court noted the differences in the relationships between insurer and insured, and between employer and employee: "a breach in the employment context does not place the employee in the same economic dilemma that an insured faces when an insurer in bad faith refuses to pay a claim or to accept a settlement offer within policy limits. When an insurer takes such actions, the insured cannot turn to the marketplace to find another insurance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
|---|---|---|---|
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

company willing to pay for the loss already incurred. The wrongfully terminated employee, on the other hand, can (and must, in order to mitigate damages) make reasonable efforts to seek alternative employment." 47 Cal. 3d at 692.

In EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co., a district court in the Southern District of New York, applying California law, declined to extend the tort claim to institutional investors challenging an insurer's rate increases. 309 F. Supp. 3d 89 (S.D.N.Y. 2018). The court reasoned that extending the tort claim "finds little or no support in the underlying policy rationale for the exception." Id. at 96. That is because whereas "when an insurer in bad faith fails to properly settle or pay a claim, the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred," "to the extent that [plaintiffs] allege that AXA deprived them of benefits relating to the 'savings component' of the policies, they *can* turn to the marketplace and invest their money elsewhere." AXA Equitable Life Ins. Co., 309 F. Supp. 3d at 96–97 (emphasis in original).

Following AXA Equitable Life Ins. Co., the Court in Thompson extended the tort claim to a putative class of elderly insureds based on allegations that Transamerica instituted MDR increases in an attempt to induce policy lapses or surrenders. 2018 WL 6790561, at *11. The Court reasoned that "Transamerica's ability to charge excessive premiums cannot be disciplined by the marketplace because new life insurance policies cannot be purchased on the lives of the insureds due to their advanced age." Id. The Court determined that "it is inconsequential that death benefits are not currently due under the Policies, because they will unavoidably become due, and the policyholders and insureds allegedly have nowhere else to turn to obtain the 'peace of mind and security' that they bargained for when they purchased the Policies." Id. In post-Thompson cases involving institutional investors, however, the Court has consistently determined that while concerns regarding marketplace competition may justify extending the tort claim to elderly insureds, these concerns do not warrant extending the claim to institutional investors. See, e.g., Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541, at *14 (C.D. Cal. Aug. 28, 2019) ("a market exists for each of the nineteen policies that would allow plaintiffs in this case to resell their interests in the policies to other investors. Accordingly, plaintiffs here are not situated similarly to the plaintiffs in Thompson who 'have nowhere else to turn to obtain the 'peace of mind and security' that they bargained for when they purchased the Policies.'"); Brighton Trustees, 2019 WL 5784925, at *6 (noting that "tort recovery is appropriate to deter misconduct on the part of insurers because 'the insured cannot turn to the marketplace to find another insurance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

company willing to pay for the loss already incurred'" but determining "[t]hat is not the case here, where plaintiffs participate in the secondary market which exists because 'the buyer, often a bank, insurance company, or pension funds seek investments uncorrelated to the traditional equity and debt capital markets.'") (internal alterations omitted).

Plaintiffs urge that they "and other investors cannot replace one life insurance policy with another policy in the secondary market" because "[t]he universe of policies is limited, and one cannot simply find comparable substitutes with other insurance companies." Opp. at 6–7. That is because "[e]ach policy is unique, as the policies and their cost of insurance rates are based on a specific individual's health and financial profile at the time of issuance, as well as the products offered by the insurance company." Opp. at 7.

"In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe." Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 44 (1999). Thus, "an insured faces a unique 'economic dilemma' when its insurer breaches the implied covenant of good faith and fair dealing." Id. That is because "[u]nlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurance company willing to pay for a loss already incurred." Id. The "economic dilemma" that an insured faces when the insurer breaches the terms of the insured's policy—peace of mind and security for both the insured and the beneficiaries of the insured's policy—is simply not comparable to the possible diminished profits that an institutional investor may suffer where an insurer breaches the terms of a policy that the institutional investor purchased on the secondary market.[1] Indeed, that is especially true because institutional investors "*can* turn to the marketplace and invest their money elsewhere." AXA Equitable Life Ins. Co., 309 F. Supp. 3d at 96–97 (emphasis in original).[2]

---

[1] Plaintiffs argue that they cannot "simply take out new life insurance policies on other individuals, as state laws prohibit taking out life insurance policies by entities or individuals *who lack an insurable interest in the life in question*." Opp. at 7 (emphasis added). However, this contention only further elucidates that plaintiffs lack the same interests in the policies they purchase on the secondary market that original insureds have in their own policies when they originally purchase them on the primary market.

[2] Plaintiffs urge that AXA Equitable Life Ins. Co. is inapt because it "stated that investors could replace the benefits of the 'savings component' of the life insurance policies elsewhere on the market" and that "[w]hile this may or may not be true, it has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 2. MDR Increases Make the Policies Economically Unviable

Plaintiffs allege that "the benefit of a life insurance policy is commensurate with its cost. No one would buy life insurance if the cost was greater than the benefit." SAC ¶ 103. Accordingly, "[b]y unlawfully increasing the Monthly Deduction Rates, Transamerica intended to make the cost of the policies greater than the benefit so that policyholders like [p]laintiffs would let their policies lapse, and Transamerica would never have to pay the death benefit." Id.

In Jonathan Neil, the California Supreme Court reasoned that public policy did not require extending the tort claim to an insured challenging an insurer's retroactive billing practices because "the billing dispute does not, by itself, deny the insured the benefits of the insurance policy—the security against losses and third party liability." 33 Cal. 4th at 940. Plaintiffs aver that the "denial of benefits" factor articulated in Jonathan Neil favors extending the tort claim to plaintiffs here based on plaintiffs' allegation regarding the economic unviability of Transamerica's policies. According to plaintiffs, "[b]ecause the value of the death benefit under a life insurance policy is tied directly to the cost of insurance, raising the cost of insurance diminishes, if not destroys, this benefit." Opp. at 12. The Court disagrees.

For example, in Progressive W. Ins. Co. v. Superior Court, an insured challenged his insurer's policy of seeking complete reimbursement from its policyholders regardless of

---

nothing to do with whether [p]laintiffs could replace the insurance policies themselves on the open market." Opp. at 7 n.1. Plaintiffs' reliance on their alleged inability to replace "the insurance policies themselves" is unavailing because, as investors, they do not face the same "economic dilemma" as do the original insureds when an insurer breaches the terms of a policy. Whereas the original insureds "are simply uninsurable due to their age, and no life insurance company will write them a new policy if their current ones expire," Opp. at 6, institutional investors can presumably replace (albeit at a loss) their investments in policies on the secondary market with other investment instruments. Indeed, plaintiffs aver that the secondary market exists because "[t]he buyer, often a bank, insurance company, or pension fund seek[s] investments uncorrelated to the traditional equity and debt capital markets[.]" SAC ¶ 37. It follows, then, that since plaintiffs purchased policies on the secondary market as alternatives to investments in "the traditional equity and debt capital markets," plaintiffs could plausibly replace their policies (perhaps at a loss) with investments in these markets.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the insurer's entitlement as a breach of the implied covenant sounding in tort. 135 Cal. App. 4th 263, 269 (2005). The insured alleged that pursuant to the common law doctrines of "the made-whole rule" and "the common-fund doctrine," the insurer was not entitled to recover any payments it made to the insured until the insured is made whole from the tortfeasor who caused the underlying injuries, and if the insurer does not participate in the insured's underlying litigation seeking to recover damages from the tortfeasor, then the insurer's ultimate recovery from the insured must be reduced by a pro rata share of the attorneys' fees that the insured incurred in seeking recovery from the tortfeasor. Id. at 270. The insured alleged that despite these common law obligations, the insurer sought recovery from the insured without investigating whether the insured had been made whole in the insured's underlying personal injury action and without acknowledging the attorneys' fees issue. Progressive, 135 Cal. App. 4th at 271.

The Court of Appeal issued a writ of mandate requiring that the trial court sustain the insurer's demurrer to the insured's tort claim. Progressive, 135 Cal. App. 4th at 281. The Court of Appeal, citing Jonathan Neil, concluded that "[b]ecause the essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach of the covenant of good faith and fair dealing when no benefits are due." Progressive, 135 Cal. App. 4th at 279. The Court of Appeal determined that the insurer did not "with[hold] 'policy benefits' when it 'sought to take back benefits from [the insured]'" because the insurer's "demand for return of the benefits it paid to [the insured], . . . *does not constitute a withholding of the benefits at the critical time.*" Id. (emphasis added). That is because the challenged practice does not "go to the heart of the policy reason behind the covenant of good faith and fair dealing—that is the prompt payment of benefits to the insured." Id.

Here, plaintiffs do not allege that benefits under the policies, such as the death benefit, have come due but that Transamerica has refused to pay them. Instead, plaintiffs argue that "[b]y improperly raising its MDRs, Transamerica is trying to *frustrate* [p]laintiffs' right to the benefits of their Policies." Opp. at 12 (emphasis added). Accordingly, the Court concludes that the "denial of benefits" factor articulated in Jonathan Neil does not require extending plaintiffs the tort claim in this case.[3]

---

[3] The Court recognizes that in two cases which predate Jonathan Neil, the California Court of Appeal determined that viable tort claims existed against insurers where the insurers had not *denied* insurance benefits that had already come due. For example, in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 3. Need to Prosecute Insurer

In Jonathan Neil, the California Supreme Court noted that "the dispute does not require the insured to prosecute the insurer in order to enforce its rights, as in the case of bad faith claims and settlement practices." 33 Cal. 4th at 939. That is because the practice that the insured challenged was the retroactive overbilling of premiums, and the insurer was required to sue the insured in order to collect the retroactive overcharges. In other words, because the insurer could not immediately collect the challenged payments from its insureds, the insureds did not need to resort to litigation in order to preserve their rights and maintain the status quo.

Here, plaintiffs allege that their "if the balance in the policy account is insufficient to cover the policy's monthly charges, . . . the policy will enter a grace period and lapse unless additional premiums are paid." SAC ¶ 12. Accordingly, "Transamerica's conduct has forced [p]laintiffs, among other policyholders, to sue Transamerica to enforce the terms of the Policies in order to avoid such lapses." Id. ¶ 103.

The Court agrees that "the onus is on the insured either to sue or lose all coverage." Opp. at 14. However, plaintiffs concede that no one of the Jonathan Neil factors is dispositive. See Opp. at 13. Accordingly, the fact that plaintiffs may have to pursue affirmative litigation against Transamerica to challenge Transamerica's MDR increases does not, itself, require extending the tort claim here.

### 4. Lack of Adequate Alternative Remedies

Plaintiffs argue that "[t]he fourth Jonathan Neil factor, the availability of alternative administrative, contractual, or tort remedies, also weighs in favor of allowing [p]laintiffs to sue for tortious breach." Opp. at 14. Plaintiffs aver that "[w]ithout a claim for tortious breach, [p]laintiffs are left with only contractual claims and a claim for conversion. Neither

---

Notrica v. State Comp. Ins. Fund, an insured sued "his workers' compensation insurer . . . based on allegations relating to [the insurer]'s reserve and claims handling policies and practices." 70 Cal. App. 4th 911, 918 (1999). Similarly, in Sec. Officers Serv., Inc. v. State Comp. Ins. Fund, an insured's employer brought suit against an insurer alleging that the insurer deliberately "delayed resolution of claims" which constituted "improprieties in claims handling." 17 Cal. App. 4th 887, 892, 898 (1993). Plaintiffs here, however, do not allege that Transamerica engaged in the mishandling of claims that already became due.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

of these claims permits successful parties to recover attorneys' fees." Opp. at 14. According to plaintiffs, then, plaintiffs' contract and conversion claims "are therefore inadequate alternatives to the proposed tortious breach claim, which entitles the insured to recover the policy benefits in full undiminished by attorney fees." Id. (internal emphasis omitted) (citing Essex Ins. Co. v. Five Star Dye House Inc., 38 Cal. 4th 1252, 1258 (2006)).

In Jonathan Neil, the California Supreme Court explained that extending the tort remedy was not required because, with respect to the insurer's policy of retroactively billing premiums, the insureds "had available various administrative, contractual, and tort remedies." 33 Cal. 4th at 941. The California Supreme Court noted that "[i]f the premium charge is wholly unjustified, the insured may, after successfully defending the action, sue for malicious prosecution." Id. at 939. Alternatively, "[i]f the debt is reported to third parties, to the debtor's detriment, a defamation action may lie." Id. Moreover, "[t]he untruthful, bad faith creditor may also be liable for intentional interference with prospective economic advantage." Id.

In other cases challenging Transamerica's MDR increases, the Court has noted that institutional investors have viable remedies other than a claim for breach of the implied covenant sounding in tort. See, e.g., Brighton Trustees, 2019 WL 5784925, at *6 ("the Court has already determined that plaintiffs have stated claims for breach of contract and breach of the implied covenant sounding in contract—therefore, this is not a case where plaintiffs have no other 'available various administrative, contractual, and tort remedies.'"); Wells Fargo Bank, 2020 WL 833518, at *11 (declining to extend tort claim to investors challenging Transamerica's MDR increases because "plaintiffs have remedies available other than a claim for tortious breach of the implied covenant. Indeed, plaintiffs have asserted claims for breach of contract and breach of the implied covenant sounding in contract, and, at this juncture, Transamerica has not sought dismissal of those claims."). That plaintiffs in this case seek tort *remedies* for Transamerica' alleged breach of the implied covenant does not, without more, require the Court to find that plaintiffs have a cognizable tort *claim* where the relevant Jonathan Neil factors compel a different result.[4]

---

[4] Plaintiffs argue that Brandt fees are "available to plaintiffs under their proposed tortious breach claim[.]" Opp. at 15. As a preliminary matter, "questions about the appropriateness of specific remedies are premature at this stage of the litigation." James ex rel. James Ambrose Johnson, Jr.1999 Tr. v. UMG Recordings, No. 11-cv-01613-SI, 2011 WL 5192476, at *5 n.3 (N.D. Cal. Nov. 1, 2011). Moreover, because plaintiffs fail to state a claim for breach of the implied covenant sounding in tort, the Court need not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

See Cates, 21 Cal. 4th at 57, 60–61 (declining to extend tort remedy for breach of the implied covenant in the context of a construction performance bond, rejecting argument that tort claim allowing recovery of attorneys' fees and interest were necessary to prevent misconduct, and noting that "our unwillingness to recognize a new tort action may mean that isolated instances of surety misconduct may yet occur" but determining that "in the absence of compelling policy reasons supporting tort recovery, we leave it up to the Legislature, which is better equipped . . . to determine whether statutorily authorized tort remedies would benefit the real estate development industry.").

### C. Miscellaneous Arguments

Plaintiffs make additional, miscellaneous arguments in opposition to Transamerica's motion to dismiss. Plaintiffs contend that: (1) denying plaintiffs the tort claim afforded to the putative class in Thompson would harm individual insureds and incentivize insurers to breach their policies; (2) the Accumulation Value constitutes an "insurance benefit," the denial of which gives rise to a claim sounding in tort; and (3) the Court's distinction between institutional investors, such as plaintiffs, and the putative class in Thompson creates "unworkable pleading standards." Opp. at 17–20.

The Court previously rejected these arguments in its prior order dismissing plaintiffs' claim for tortious breach. See MTD Order at 14–18. Plaintiffs acknowledge that the Court "has previously rejected the[se] arguments" but indicate that they are "restat[ing] them here to preserve them for appeal." Opp. at 17 n.2. Accordingly, plaintiffs do not provide the Court with a compelling basis to depart from its earlier determination that these arguments fail to establish that plaintiffs have adequately stated a claim for breach of the implied covenant sounding in tort.

/ / /

/ / /

/ / /

/ / /

---

decide whether plaintiffs would be entitled to Brandt fees assuming *arguendo* that plaintiffs' tort claim was viable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08104-CAS(GJSx) | Date | April 13, 2020 |
| Title | EFG BANK AG, CAYMAN BRANCH ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## IV.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Transamerica's partial motion to dismiss and **DISMISSES** plaintiffs' third claim for tortious breach of the implied covenant of good faith and fair dealing **with prejudice**.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |